UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DILLSBURG VENTURES, LLC, | : | |
| Plaintiffs | : | NO.: 1:10-CV-00275 |
| | : | |
| v. | : | (JUDGE CONNER) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| CARROLL TOWNSHIP, | : | |
| YORK COUNTY, | : | |
| Defendant | : | |
| | : | |

## REPORT AND RECOMMENDATION

Pursuant to an Order entered on August 4, 2010 (Doc. 7), Honorable Judge Christopher C. Conner referred defendant's motion to dismiss (Doc. 4) to the undersigned Magistrate Judge for the purpose of preparing a Report & Recommendation.

**I. Background**

This case presents an unusual question of law regarding whether a contract between a party–appellant and a party–appellee entered into during the course of a mediation process required by the Commonwealth Court of Pennsylvania, after an appeal is filed, is enforceable after the appellant withdraws its appeal prior to argument.

The facts as presented here, drawn from the complaint and its attachments, are taken as true. Since 2005, plaintiff Dillsburg Ventures, LLC and defendant Carroll Township had been in the process of negotiating a land-development plan for a forty-five-acre parcel of land that Dillsburg owns. (Doc. 1, at ¶ 7.) Dillsburg had submitted preliminary land-development plans for the parcel; on February 25, 2008, the Township issued a written denial of approval for the plans and the requested waivers. (Doc. 1-3, at 1 ¶¶ B–C.)

On March 25, Dillsburg filed a Notice of Appeal with the Court of Common Pleas

of York County to challenge the denial of its plans. (*Id.* at 1 ¶ D.) On July 23, the Court of Common Pleas ordered the Township to approve the plans as presented, and the Township appealed the court's order on August 20. (*Id.* at 1 ¶¶ E–F.) The appeal was then referred to mediation. (*Id.* at 1 ¶ G.)

During the course of mediation, Dillsburg and the Township agreed that it would be mutually beneficial to pursue a plan that was "materially different" from the one that the Court of Common Pleas had ordered approved. (Doc. 1, ¶ 10.) As an outgrowth of this realization, the parties executed a document entitled "Negotiation Procedure and Settlement Agreement" (Agreement) on February 9, 2009. (*Id.* ¶¶ 5, 8; Doc. 1-3.)

The Agreement included a "Sketch Plan," which represented an alternative development plan that the parties agreed was "acceptable" and "generally consistent with Carroll Township ordinances." (Doc. 1-3, at 2 ¶ 2.) Under the Agreement, the parties were required "to cooperate and perform their obligations . . . in good faith with the goal of settling the Appeal to allow for development on the Property consistent with the Sketch Plan." (*Id.* at 3 ¶ 6.) Specifically, the Agreement set a date by which the parties would submit a joint motion to the court for approval of the Sketch Plan plus any revisions and amendments that had been made; the motion was to include a stipulation that the Court's approval would constitute a "full settlement and discontinuance of the Appeal." (*Id.* at 3 ¶ 4.)

Paragraph 8 of the Agreement stated that the Agreement could be terminated when, "in the sole discretion of either party, the settlement proceedings . . . are not proceeding in good faith or the parties cannot resolve a dispute as set forth herein." (*Id.* at 4 ¶ 8.) A party that sought to terminate the agreement was required to "notify the other of the specific nature of the dispute," and the other was required to provide a written response within three business days. (*Id.*) An unsatisfactory response would allow the party seeking termination to terminate the agreement via written notice, ending the

2

settlement discussions, at which time the parties would "continue on with the Appeal." (*Id.*)

Following execution of the Agreement, Dillsburg spent over $100,000, mostly on engineering fees, in order to redesign the project and refine the Sketch Plan so that it suited the objectives of both Dillsburg and the Township. (*Id.* ¶ 16.)

On September 14, 2009, and to Dillsburg's surprise, the Carroll Township Board of Supervisors unanimously voted to direct their solicitor to terminate the Agreement. (*Id.* ¶ 18; Doc. 1-4, at 3.) The Township had voiced no prior problems or difficulties with the Agreement or settlement process. (Doc. 1, ¶ 19.) The next day, September 15, the Township's solicitor, Steven A. Stine, Esq., called Charles M. Suhr, Esq., counsel for Dillsburg, to inform him of the Township's dissatisfaction and the developments of September 14. (*Id.* ¶ 20.) Suhr responded by email the same day to express surprise and caution the Township that its actions may have been in breach of the Agreement, as well as to suggest "that the parties should talk before precipitous action was taken by the Township." (*Id.* ¶ 21; Doc. 1-5.)

On October 6, Attorney Stine wrote to Attorney Suhr; the letter indicated that Stine had "spoken with the Township concerning the possibility of making changes to the Plan, and the Township is not willing to do so." (Doc. 1-6; Doc. 1, ¶ 23.) The letter invited a response within three business days, referring to ¶ 8 of the Agreement. (Doc. 1-6; Doc. 1, ¶ 27.) Attorney Suhr's responding letter was dated October 9, and in addition to explaining Dillsburg's position that the Township's actions were inconsistent with the Agreement, it reminded the Township of a mediation conference scheduled for October 27 and urged that the parties should "make a good-faith effort to put the process back on track." (Doc. 1-7; Doc. 1, ¶¶ 28–31.)

The Township's public records and meeting minutes reveal no further formal action being taken on the matter after Attorney Suhr's letter of October 9. (Doc. 1, ¶ 33.)

3

Nor did Dillsburg receive any other communication, formal or informal, from the Township. (*Id.* ¶ 35.) Instead, on October 26, the day before the scheduled mediation conference, the Township filed a praecipe in the Commonwealth Court requesting that the prothonotary discontinue the Township's appeal. (*Id.* ¶ 36; Doc. 1-8.) The end result was that Dillsburg had final approval of its originally submitted plans, despite the parties' previous agreement that revisions to the plans would have benefitted both Dillsburg and the Township. (Doc. 1, ¶¶ 39–40.)

**II. Standard of Review**

The court's task on a Rule 12(b)(6) motion to dismiss for failure to state a claim is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The court, however, need not accept as true a complaint's "bald assertions" or "legal conclusions." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pleaded facts, but rather tests the legal foundation of the plaintiff's claims. *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989).

The Supreme Court recently abrogated its longstanding decision in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which had held that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court retired this "no set of facts" language in favor of a new standard: a plaintiff's obligation to state a claim for relief under Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

4

544, 555 (2007). As a result of *Twombly*, plaintiffs were required to nudge their claims "across the line from conceivable to plausible." *Id.* at 570. To state a claim that satisfies Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 555. "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 555 n.3). According to this standard, a court may dismiss a complaint if it fails to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

Moreover, the Court's more recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), held that the pleading requirements of Rule 8 mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

## III. Discussion

The question presented in this case is one of first impression under Pennsylvania law. Phrased most succinctly: Is a contract entered into during the course of a required mediation process of an appellate court enforceable after the party–appellant withdraws its appeal prior to oral argument?

5

*(A) Abstention and certification*

Although it has always been considered within a federal court's province to decide questions of state law when its jurisdiction has properly been invoked, a degree of reticence arises when the federal court would be breaking new ground in state-law interpretation. In the interest of maintaining a balance between the powers of the state and the federal government, two broad doctrinal lines have been developed that help keep federal courts from encroaching upon a state's sovereignty to decide its own governing law: abstention, which allows a federal court to decline to exercise jurisdiction, and certification, which allows a federal court to stay a case while referring a state-law question to the state's supreme court.

But certification is not an option here. Only a federal Court of Appeals or the Supreme Court may certify a question to the Pennsylvania Supreme Court. Pa. Internal Operating Procedures of the Supreme Court § 10(A). Nor is abstention a possibility. Even if a question of state law is "difficult or uncertain" or an answer has "not yet been given by the highest court of the state," a federal court may not abstain from adjudicating the question in the absence of "exceptional circumstances." *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943). In 1959, a dissenting Justice Brennan concisely enunciated the high threshold for justifying abstention:

> [A]bdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to state court would clearly serve one of two important countervailing interests: either the avoidance of a premature and perhaps unnecessary decision of a serious federal constitutional question, or the avoidance of the hazard of unsettling some delicate balance in the area of federal–state relationships.

*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 32 (1959) (Brennan, J., dissenting). Neither of the two circumstances that Justice Brennan mentioned are present here. There is no federal constitutional question, and the unusual contract-law question

6

presented here does not threaten a result that would create "needless friction with state policies." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941).

The duty to answer the hitherto-unanswered question in this case rests squarely upon this Court.

### (B) Defendant's argument

Defendant rests its case upon its claim to an absolute right to discontinue its appeal under Pennsylvania Rule of Appellate Procedure 1973(a), which provides: "An appellant may discontinue an appeal or other matter as to all appellees as of course at any time prior to argument, or thereafter by leave of court upon application." Pa. R.A.P. 1973(a). Other than in the discussion of the standard of review, defendant's brief in support of its motion to dismiss cites no cases.

The language of Rule 1973 does unequivocally provide an unrestricted right to discontinuance any time before oral argument—but an argument based solely on Rule 1973 misses the point of plaintiff's complaint. Although defendant may be subject to no statutory or other legal penalty strictly for the act of terminating their appeal, it executed a contract with plaintiff knowing that it committed itself to negotiating a new development plan, giving rise to an obligation that it unilaterally chose to abandon.

Defendant's argument implicitly hinges on the proposition the their contract with plaintiff is unenforceable, as defendant makes no attempt to argue that its actions were not in breach of the contract, as they clearly were. The document entitled "Negotiation Procedure and Settlement Agreement" (Doc. 1-3) was signed and dated by representatives of both parties. Before detailing the duties of the parties, the Agreement stated: "NOW, THEREFORE, for and in consideration of the mutual covenants and promises contained herein, and intending to be legally bound hereby, the parties agree hereto as follows," and continued to spell out the obligations to which Dillsburg and Carroll Township had

7

consented. (*Id.* at 3 ¶ J.) The Agreement bound the parties to the process of settlement and negotiation regarding plaintiff's proposed development and included a specific procedure for dissolving the contract. It required the party seeking dissolution to notify the other party, in writing, of the "specific nature" of a dispute unresolvable under the Agreement's provisions, and to allow the other three days to respond to the notification of the dispute. (Doc. 1-3, at 4 ¶ 8.) Only if the other party's response to the notice was "not satisfactory" could the party asserting the problem actually terminate the Agreement. (*Id.*)

According to the complaint, defendant's Board of Supervisors unanimously voted to direct their solicitor to terminate the Agreement without ever consulting plaintiff. The letter from defendant's solicitor to plaintiff's counsel stated that defendant was simply "not willing" to move forward with making changes to the proposed development. The vote to terminate the Agreement, as well as the following letter stating defendant's unwillingness to continue with the process, does not demonstrate the good-faith cooperation, provide the pretermination notice, or indicate the specific "dispute" that ¶¶ 6 and 8 of the Agreement required.

Because defendant did violate the Agreement's terms, plaintiff's complaint may only be dismissed if the Agreement is unenforceable as a contract.

*(C) Enforceability of the agreement*

The question facing the Court being a new one, the underpinnings of this discussion must come from general principles of contract law and tangentially related cases.

"A contract is a promise or set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." *Forest Glen Condominium Ass'n v. Forest Green Common Ltd. P'ship*, 900 A.2d 859, 863 (Pa. Super. 2006) (quoting Restatement (Second) of Contracts § 1 (1981)). Parties may generally contract as they wish, a freedom that may be limited by any legislation that

8

imposes restrictions or by public policies that "clearly outweigh[]" the interest in enforcement of particular contractual terms. *Cent. Dauphin Sch. Dist. v. Am. Cas. Co.*, 426 A.2d 94, 96 (Pa. 1981) (quoting Restatement (Second) of Contracts Intro. Note 46 (Tentative Draft No. 12, Mar. 1, 1977)). In the absence of these limitations or equitable concerns like unconscionability, mistake, or fraud, contracting parties are normally bound by their agreements. *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990). Mere inconvenience or expense "will not relieve a party from performance of a contract." *Sentry Safety Control Corp. v. Jaybee Amusement Co.*, 169 A. 419, 422 (Pa. Super. 1933) (citing *Corona Coal & Coke Co. v. Dickinson*, 104 A. 741, 742 (Pa. 1918)). It is common practice for contracting parties to alter their legal relationships by express agreement, and it has long been accepted that this practice is permissible. *Ress v. Barent*, 548 A.2d 1259, 1265 (Pa. Super. 1988) (citing *Germantown Trust Co. v. Stanley Co. of Am.*, 13 A.2d 406, 408 (Pa. 1940)).

In this case, nothing before the Court suggests that anything undermines the validity or prevents the enforcement of the Agreement between plaintiff and defendant. Defendant has not presented, and the Court's independent research has not uncovered, any policy or statute the purpose or terms of which would be contravened by enforcing a contract made in the course of the mandatory-mediation portion of the appellate process, even after the appeal has been discontinued. Defendant has not argued unconscionability, mistake, fraud, or any other equitable defense to enforceability. The agreement into which the parties entered, although made in the course of mandatory mediation, was not itself mandatory; mediation could have been completed without ever executing that contract. There is no public policy the upholding of which clearly outweighs the interest in allowing parties to contract as they please. *Contra Cent. Dauphin Sch. Dist.*, 426 A.2d at 96 (refusing to enforce, on public-policy grounds, a contract between a school district and an insurer that allowed the district to purchase "insurance" against "court-ordered and

9

statutorily mandated refunding of taxes collected through an unlawful taxing measure").

Given the absence of a law, policy, or doctrine that requires otherwise, and assuming that plaintiff's factual claims are ultimately proven true, the Agreement between plaintiff and defendant may be enforced consistently with Pennsylvania law.

**IV. Conclusion**

Based on the foregoing discussion, it is recommended that defendant's motion to dismiss the complaint be DENIED.

s/ William T. Prince  
William T. Prince  
United States Magistrate Judge

November 22, 2010